# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**MARK W. DOBRONSKI**,
an individual,

                Plaintiff,

v.

**ENSURETY VENTURES, LLC**,
a Missouri limited liability company,
d/b/a **OMEGA HOME CARE**;

**EFS COMPANIES, LLC**,
a Delaware limited liability company;

**BRIAN PATRICK FOX**,
an individual; and,

**BTB UNKNOWN ENTITY**,
an unknown entity,

                Defendants.

Case No.

Case: 2:22−cv−11133
Assigned To : Edmunds, Nancy G.
Referral Judge: Ivy, Curtis, Jr
Assign. Date : 5/23/2022
Description: CMP DOBRONSKI V.
ENSURETY VENTURES, LLC ET AL (NA)

_____

## **COMPLAINT**

NOW COMES the Plaintiff, MARK W. DOBRONSKI, appearing *in propria persona*, and for his complaint against Defendants alleges:

1.  This matter arises under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, *et seq.*, the Michigan Telephone Companies as Common

Carriers Act ("MTCCCA"), M.C.L. § 484.101, *et seq.*, the Michigan Home Solicitation Sales Act ("MHSSA"), M.C.L. § 445.101, *et seq.*, and the Michigan Consumer Protection Act, M.C.L. § 445.901, *et seq.*

### Parties

2.  Plaintiff is an individual, of the age of majority, a citizen of the United States of America, has a place of business and residence in Lima Township, Washtenaw County, Michigan, and has a place of business in the City of Westland, Wayne County, Michigan.

3.  Upon information and belief, Defendant ENSURETY VENTURES, LLC. ("EV") is a limited liability company organized and existing under the laws of the State of Missouri, with a registered agent for service of process located at 825 Maryville Centre Drive, Suite 300, Town and County, Missouri 63017-5946, and transacts business under various fictitious names, including, *inter alia*, Omega Home Care ("Omega"), with a headquarters office purportedly located in Detroit, Michigan.

4.  Upon information and belief, Defendant EFS COMPANIES, LLC ("EFS") is a limited liability company organized and existing under the laws of the State of Delaware, which is qualified and registered to do business in the State of Michigan, with a registered office located at 40600 Ann Arbor Road East, Suite 201, Plymouth, Michigan 48170-4675.

5.   Upon information and belief, Defendant BRIAN PATRICK FOX ("Fox") is an individual, of the age of majority, is mentally competent, is not in the military service, resides at 38 Windcastle Drive, Saint Charles, Missouri 63304-0447, holds himself out as an owner and manager of co-defendants EV and EFS, and orchestrated, directed, personally authorized, and participated in the tortious or illegal conduct complained of herein.

6.   BTB UNKNOWN ENTITY ("BTB") is being used as an identifier for the third-party agent utilized by Defendants Ensurety, EFS, and Fox to initiate the illegal telemarketing calls alleged, *infra*, the true and correct name of which is presently unknown to Plaintiff, but well known to Defendants.  See paragraph 64, *infra*.  Upon Plaintiff learning the true identity of the third-party agent, Plaintiff will amend this complaint to so reflect the true identity and effect service of process upon said entity.

## Jurisdiction

7.   This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

8.  This Court has limited personal jurisdiction over Defendants EV, EFS, and BTB pursuant to M.C.L. § 600.715 as a result of: the transaction of any business within the state; and/or, the doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.

9.  This Court has limited personal jurisdiction over Defendant Fox pursuant to M.C.L. § 600.705 as a result of: the transaction of any business within the state; and/or, the doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.

## Venue

10.  Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2), as the tortious or illegal telephone calls complained of herein were received in this judicial district.

## General Allegations

11. In response to widespread public outrage over intrusive telemarketing calls to homes and businesses, the United States Congress acted to prevent entities, like Defendant, from invading American citizen's privacy and to prevent abusive "robo-calls" by enacting the TCPA.

12.  According to the Federal Communications Commission ("FCC"), "Unwanted calls and texts are the number one complaint to the FCC.  There are thousands of complaints to the FCC every month on both telemarketing and robocalls."

13.  Congress explicitly found that robo-calling is an invasion of privacy.

14.  In regard to such telephone solicitations, Senator Hollings of South

Carolina, the primary sponsor of the bill, explained, "computerized calls are the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall... these computerized telephone calls threaten our personal safety... These machines are out of control, and their use is growing by 30 percent every year.  It is telephone terrorism, and it has got to stop...." See <u>In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,</u> 17 FCC Rcd. 17459, 17474, fn. 90 (2002), quoting 137 Cong. Rec. 30,821-30,822 (Nov. 7, 1991).

15.  In enacting the TCPA, Congress intentionally created a legally enforceable bounty system, not unlike *qui tam* statutes, to incentivize the assistance of aggrieved private citizens to act as "private attorneys general" in enforcing federal law.

16.  The TCPA, at 47 U.S.C. § 227(b), promulgates in relevant part as follows:

"Restrictions on use of automated telephone equipment

(1)  Prohibitions  It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States— ...

(B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is

exempted by rule or order by the Commission under paragraph (2)(B)...."

17. Pursuant to authority delegated by Congress to the FCC under the TCPA at 47 U.S.C. § 227(b)(2), the FCC has adopted regulations to implement and carry out the TCPA.

18. The TCPA implementing regulations, at 47 C.F.R. § 64.1200, promulgate in relevant part:

(a) No person or entity may: ...

(3) Initiate any telephone call to any residential line using an artificial or prerecorded voice to deliver a message without the prior express written consent of the called party, unless the call;

(i) Is made for emergency purposes;

(ii) Is not made for a commercial purpose;

(iii) Is made for a commercial purpose but does not include or introduce an advertisement or constitute telemarketing;

(iv) Is made by or on behalf of a tax-exempt nonprofit organization; or

(v) Delivers a "health care" message made by, or on behalf of, a "covered entity" or its "business associate," as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103...

(b) All artificial or prerecorded voice telephone messages shall:

(1) At the beginning of the message, state clearly the identity of the business, individual, or other entity that is responsible for initiating the call. If a business is responsible for initiating the call, the name under which the entity is registered to conduct business with the State Corporation Commission (or comparable regulatory authority) must be stated;

(2) During or after the message, state clearly the telephone number (other than that of the autodialer or prerecorded message player that placed the call) of such business, other entity, or individual. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges. For telemarketing messages to residential telephone subscribers, such telephone number must permit any individual to make a do-not-call request during regular business hours for the duration of the telemarketing campaign; and

(3) In every case where the artificial or prerecorded voice telephone message includes or introduces an advertisement or constitutes telemarketing and is delivered to a residential telephone line or any of the lines or telephone numbers described in paragraphs (a)(1)(I) through (iii), provide an automated, interactive voice- and/or key press-activated opt-out mechanism for the called person to make a do-not-call request, including brief explanatory instructions on how to use such mechanism, within two (2) seconds of providing the identification information required in paragraph (b)(1) of this section. When the called person elects to opt out using such mechanism, the mechanism, must automatically record the called person's number to the seller's do-not-call list and immediately terminate the call. When the artificial or prerecorded voice telephone message is left on an answering machine or a voice mail service, such message must also provide a toll free number that enables the called person to call back at a later time and

connect directly to the automated, interactive voice- and/or key press-activated opt-out mechanism and automatically record the called person's number to the seller's do-not-call list...

(d) No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will

be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges. . .

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made. . . ."

19.  The TCPA regulations at, 47 C.F.R. § 64.1601, additionally promulgate in relevant part:

"(e) Any person or entity that engages in telemarketing, as defined in section 64.1200(f)(10) **must** transmit caller identification information.

(1) For purposes of this paragraph, **caller identification information must include either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer**. It shall not be a violation of this paragraph to substitute (for the name and phone number used in, or billed for, making the call) the name of the seller on behalf of which the telemarketing call is placed

9

and the seller's customer service telephone number. **The telephone number so provided must permit any individual to make a do-not-call request during regular business hours.**

(2) Any person or entity that engages in telemarketing is prohibited from blocking the transmission of caller identification information." [Emphasis added.]

20.   The TCPA, at 47 U.S.C. § 227(b)(3), provides for a private right of action, as follows:

"PRIVATE RIGHT OF ACTION.  **A person or entity** may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State –

(A) an action based on a violation of this **subsection or the regulations prescribed under this subsection** to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages **for each such violation**, whichever is greater, or

(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." [Emphasis added.]

21.   Pursuant to Congressional mandate set forth at 47 U.S.C. § 227(c)(1), the

FCC adopted regulations establishing a national "do not call" database and

prohibiting any person from making or transmitting a telephone solicitation to the

telephone number of any subscriber included in such database, which regulations are

set forth at 47 C.F.R. § 64.1200(c), and promulgate in relevant part:

> "No person or entity shall initiate any telephone solicitation to:...
>
> "(2) A **residential telephone subscriber who** has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government...."

22. Additionally, the TCPA, at 47 U.S.C. § 227(c)(5), as it relates to telephone

numbers appearing of the do-not-call list, provides for a private right of action, as

follows:

> "Private right of action. A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in **violation of the regulations prescribed under this subsection** may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—
>
> (A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,
>
> (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages **for each such violation**, whichever is greater, or
>
> (C)  both such actions.
>
> It shall be an affirmative defense in any action brought

under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph."

23.   The MTCCCA, at M.C.L. § 484.125, promulgates in relevant part as follows:

"(2) A caller shall not use a telephone line to contact a subscriber at the subscriber's residence, business, or toll-free telephone number to do either of the following: ...

(a) Deliver a recorded message for the purpose of presenting commercial advertising to the subscriber, unless either of the following occurs:

(i) The subscriber has knowingly and voluntarily requested, consented, permitted, or authorized the contact from the caller.

(ii) The subscriber has knowingly and voluntarily provided his or her telephone number to the caller.

(b) Deliver or attempt to deliver intrastate commercial advertising if the caller activates a feature to block the display of caller identification information that would otherwise be available to the subscriber...

(5) A subscriber contacted by a caller in violation of this section may bring an action to recover damages of $1,000.00, together with reasonable attorneys' fees...

12

(9) A caller who violates this section is guilty of a misdemeanor, punishable by a fine of $1,000.00 or imprisonment for 10 days, or both."

24.  The MHSSA, at M.C.L. § 445.111a(5), promulgates:

". . . A telephone solicitor shall not make a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the then-current version of the federal [do-not-call] list."

25.  The MHSSA, at M.C.L. § 445.111b, promulgates in relevant part:

"(1) At the beginning of a telephone solicitation, a person making a telephone solicitation to a residential telephone subscriber shall state his or her name and the full name of the organization or other person on whose behalf the call was initiated and provide a telephone number of the organization or other person on request. A natural person must be available to answer the telephone number at any time when telephone solicitations are being made..."

26.  The MHSSA, at M.C.L. § 445.111c, promulgates in relevant part as follows:

" (1) It is an unfair or deceptive act or practice and a violation of this act for a telephone solicitor to do any of the following:...

(f) Fail to comply with the requirements of section 1a or 1b.

(2) ... [A] person who knowingly or intentionally violates this section is guilty of a misdemeanor punishable by imprisonment for not more than 6 months or a fine of not more than $500.00, or both.

(3) A person who suffers loss as a result of violation of this

13

section may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorney fees."

27. The MCPA, at M.C.L. § 445.903, promulgates in relevant part as follows:

"(1) Unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful and are defined as follows: ...

(a) Causing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services.

(b) Using deceptive representations or deceptive designations of geographic origin in connection with goods or services...

(i) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions...

(w) Representing that a consumer will receive a rebate, discount, or other benefit as an inducement for entering into a transaction, if the benefit is contingent on an event to occur subsequent to the consummation of the transaction...."

28. The MCPA, at M.C.L. § 445.911, provides for a private right of action, as follows:

"(1) Whether or not a person seeks damages or has an adequate remedy at law, a person may bring an action to do either or both of the following:

(a) Obtain a declaratory judgment that a method, act, or practice is unlawful under section 3.

14

(b) Enjoin in accordance with the principles of equity a person who is engaging or is about to engage in a method, act, or practice that is unlawful under section 3.

(2) Except in a class action or as otherwise provided in subsection (3), a person who suffers loss as a result of a violation of this act may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorney fees...."

29.  Telephone number 602-559-1090 is a residential telephone number which belongs to Plaintiff.

30.  Plaintiff's telephone lines have been besieged with telemarketing calls hawking such things as alarm systems, Google listings, automobile warranties, health insurance, life insurance, credit cards, and even financial miracles from God.  Some calls are blatant scams, including calls purportedly from the Social Security Administration, the U.S. Drug Enforcement Administration, and other government agencies, claiming that arrest warrants have been issued against Plaintiff for alleged drug trafficking and money laundering activities.

31.  Plaintiff's residential telephone number (602-559-1090) is listed on the National Do Not Call Registry maintained by the United States Federal Trade Commission pursuant to 16 C.F.R. Part 310 and have been so listed continuously since at least May 2, 2020 and at all times relevant hereto.

32.  By listing his residential telephone numbers on the National Do Not Call

Registry, Plaintiff has given constructive notice to the world, including the Defendant, that Plaintiff does not wish to receive telephone solicitations or robocalls at his residential telephone number.

33.   The FCC has issued a declaratory ruling defining "called party" as "the subscriber, i.e., the consumer assigned the telephone number dialed and billed for the call, or the **non-subscriber customary user of a telephone number included in a family or business calling plan**." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02–278, WC Docket No. 07–135, FCC 15–72, 2015 WL 4387780, at *26 ¶ 73 (FCC July 10, 2015) [Emphasis added].

34.   Plaintiff is  a customary user of the called telephone lines, is the one that was the actual recipient of the telephone calls at issue in this complaint, and suffered the nuisance and invasion of privacy of same.  Thus, Plaintiff has standing to bring this action for alleged violations of TCPA's robocall provisions.  See *Leyse v. Bank of America Nat. Ass'n*, 804 F.3d 316, 324 (C.A.3, 2015).

35.   At no time relevant hereto has Plaintiff or any other authorized person requested, consented, permitted, or authorized the contact from the Defendants.

36.   At no time has Plaintiff provided permission to the Defendants to engage in telephone solicitation with the Plaintiff via telephone.

16

37.  In fact, Plaintiff has sued each of the named Defendants on prior occasions for similar telemarketing call violations and has expressly made clear to Defendants that Plaintiff does not wish to receive telemarketing calls from Defendants.

38.  Plaintiff is not alone in receiving unwanted telemarketing calls from Defendants, as numerous consumers have posted complaints which appear on the Better Business Bureau website, three of which are included below:

> "I have received dozens of calls from this company trying to sell me an extended warranty for my vehicle. I am on the do not call registry and I've politely asked every caller to stop calling, but they continue to do so every day. Some calls start as early as 8am and some go into the evening. I've asked to speak to supervisors & was told "you are and I assure you I will take care of this"; while others it's like they don't hear me or understand what I'm saying because they start reading their script verbatim to sell a warranty. Today I got a new caller who gave me the name of the company and website, but when I asked for the phone number he told me "we aren't supposed to give it out. This is an outbound call center and we call people all over the United States". I explained I wanted to talk with a supervisor and was put on a brief hold and another man came on the line speaking very very softly. He confirmed he was the supervisor but when I began asking questions and told him I could barely hear him and could he speak up the line immediately hung up. Note I had no problem hearing the initial caller."

> "I see in previous responses from Omega Auto Care, they claim to not make outbound solicitation calls whatsoever. However, this is my experience… I receive numerous calls every week even after pressing the option to be removed from their call list. They mask/change the number they are

calling from so blocking it does no good. After continuing calls, I started speaking to the representatives who are rude and will usually hang up on me or use vulgar language. They say they are calling for Omega Auto Care. If you act interested, they transfer you to a salesperson for Omega Auto Care who tries to sell you an Auto Warranty. The offer is for a ******** package which covers anything on your vehicle with only a $100 deposit. They encourage you to go to this BBB website to observe the A+ rating and even give you the corporate phone number of ************. This really does appear to be Omega Auto Care's phone number. No matter how many times I ask to be removed from the call list, the calls continue."

"Omega Autocare has been calling me 2x per day for the past 2 weeks, every day. They are using a phone spoofing solution to fake the caller ID so that it's the same caller ID as my cell number, and they keep harassing me about an auto warranty. I have asked multiple times to be placed on the do not call list and the representatives become rude and pushy when I ask for this."

[Source:https://www.bbb.org/us/fl/jacksonville/profile/auto-warranty-plans/omega-home-auto-care-0403-235965926/complaints].

39.  Pursuant to 47 U.S.C. § 217, the act, omission, or failure of any officer, agent, or other person acting for or employed by an common carrier or user, acting within the scope of his employment, shall in every case also be deemed to be the act, omission, or failure of such carrier or user as well as that of the person.

40.  Courts are legally bound to give great deference to the FCC's interpretations of the TCPA and its own regulations.

41.  The FCC has clarified that sellers may be held vicariously liable for

violations of the TCPA by third-party telemarketers that initiate calls to market the

seller's products or services, declaring as follows:

> "[A] company on whose behalf a telephone solicitation is
> made bears the responsibility for any violation of our
> telemarketing rules and calls placed by a third party on
> behalf of that company are treated as if the company itself
> placed the call."

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act*

*of 1991*, Declaratory Ruling, 20 FCC Rcd 13664, 13667, ¶ 7 (2005).

42.  When considering individual corporate officer liability, other Courts have

agreed that a corporate officer involved in the telemarketing at issue may be

personally liable under the TCPA.  *See, e.g., Jackson Five Star Catering, Inc. v.*

*Beason,* No. 10-10010, 2013 U.S. Dist. LEXIS 155985, *10 (E.D. Mich. Nov. 8,

2013) ("[M]any courts have held that corporate actors can be individually liable for

violating the TCPA where they had direct, personal participating in or personally

authorized the conduct found to have violated the statute.") (internal citation

omitted); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D.MD.

2011) ("If an individual acting on behalf of a corporation could avoid individual

liability, the TCPA would lose much of its force.").

43.  It is well settled under Michigan law that corporate employees and officials

are personally liable for all tortious and criminal acts in which they participate,

regardless of whether they are acting on their own behalf or on behalf of a corporation. A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent for the corporation and not on his own behalf.

44. Defendant Fox is a manager of Defendants Ensurety and EFS, and is responsible for engaging the third-party agents utilized in marketing the products and services on behalf of Defendants Ensurety and EFS, including directing the marketing activities of the third-party agents.

45. On prior occasions, when Defendants Ensurety and EFS have been sued for violations of the TCPA and other telemarketing laws, in order to attempt to feign a lack of participation in the illegal telemarketing activities, Defendant Fox will claim a lack of knowledge of the activities by the third-party, allegedly terminate the third-party, and then promptly re-hire the third-party using a different corporate name but operated by the same principals.

46. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of invasion of privacy and intrusion on Plaintiff's right of seclusion.

47. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of the occupation of the telephone line by

unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls, including emergency calls, when the telephone line was seized by Defendant's calls.

48. For each and every call alleged herein initiated to Plaintiff's telephone line, Defendant caused an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them.  Even for unanswered calls, Plaintiff had to deal with missed call notifications and call logs that reflected the unwanted calls.  This also impaired the usefulness of these features on Plaintiff's  telephone, which features are designed to inform the user of important missed communications.

49.  Each and every call placed without consent by Defendant alleged herein to Plaintiff's telephone lines resulted in the injury of a trespass to Plaintiff's chattel, namely Plaintiff's telephone line and its telephone services.

50.  For purposes of the TCPA, the FCC has defined "willfully or knowingly" to mean that the violator knew that he was doing the act in question, in this case, initiating a telephone solicitation, irrespective  of any intent to violate the law.  A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance.

## Allegations Specific to this Complaint

51.  Defendant Ensurety is engaged in the business of selling its home warranty service plans to consumers.

52.  Defendant EFS is the "finance" affiliate of Ensurety and provides the "financing" of Ensurety's home warranty service plans to consumers.

53.  Upon information and belief, as part of its marketing practices, Defendants use third-party agents, sometimes termed "lead generators" or "ropers", who are usually located in foreign continents to take advantage of the very low wages paid in those nations and in an attempt to skirt state and federal telemarketing laws in the United States, to make automated telephone calls *en masse* to consumers to develop sales leads of prospects for Defendants' products or services.

54.  On each of the following dates and times, Defendants or Defendants' agent initiated a telephone call to Plaintiff's residential telephone number 602-559-1090 from the caller identification number indicated:

| Date | Time | Caller ID | Note |
|------|------|-----------|------|
| 04/21/2022 | 12:49 | 602-551-6781 | # |
| 04/21/2022 | 13:21 | 602-551-6662 | # |
| 04/22/2022 | 16:26 | 602-551-6595 | # |
| 04/23/2022 | 17:20 | 602-551-6618 | # |
| 04/26/2022 | 13:44 | 602-551-6329 | # |
| 04/27/2022 | 11:45 | 602-551-6822 | # |
| 04/29/2022 | 11:55 | 602-551-6344 | # |
| 05/07/2022 | 11:47 | 602-551-6281 | # |
| 05/10/2022 | 12:42 | 602-551-6677 | # $ |

05/19/2022 13:52      602-551-6294      #
05/19/2022 16:49      602-551-6548      #
05/20/2022 16:11      602-551-6704      #
   (#) denotes recorded message
   ($) denotes connected to live
     telemarketer after pressing '1'

55. After each call listed in paragraph 54, *supra*, Plaintiff would dial the telephone number shown in the caller identification, and on each occasion the dialed telephone number would either be disconnected, invalid, or would be answered by a recording stating "please state your name and Google voice will try to connect you" and then disconnect.

56. Defendant or Defendant's agent utilizes an automated telephone dialing system to dial telephone numbers *en masse.* When a consumer answers one of the prospecting telephone calls, there is a delay of 3-5 seconds from the time that the consumer answers the telephone call before a prerecorded voice begins to play.

57. For each of the telephone calls denoted with an octothorpe (#) in paragraph 54, *supra*, upon Plaintiff answering the incoming telephone call, a prerecorded voice message was received, stating as follows:

> "Hello. This is a call from your utility company. You have been paying more than your consumption from the previous few months. You will be compensated by 50 dollars along with 35 percent reduction on your electric and gas bill. Please press '1' to get your compensation."

58. In order to better identify the calling party, each time that Plaintiff received

a prerecorded voice message Plaintiff would press '1'.  Except on the one telephone call denoted with a dollar sign ($) in paragraph 54, *supra*, upon Plaintiff pressing '1', the call would disconnect.

### The May 10, 2022 Call

59.  During the call identified in paragraph 54, *supra*, on May 10, 2022 at 12:42 P.M., upon Plaintiff pressing '1', Plaintiff was connected to a live telemarketer who identified himself as "Jacob" with Arizona Public Service Company ("APS"). Jacob informed Plaintiff that Plaintiff's electric bill was overpaid by $110.95, and that Plaintiff would be receiving a refund of $110.95, and a 20 percent discount on Plaintiff's electric bill for the next 6 billing cycles.  Jacob then sought personal identifying information from Plaintiff, including name, address, and credit card number.

60.  Plaintiff engaged in an investigative technique known as a "canary trap"[1] by providing controlled false information to Blane, including a false name and a controlled credit card number specifically designed to decline the charge but log the transaction with Plaintiff's credit card institution.

61.  During the conversation, Plaintiff requested a contact telephone number

_____

[1]   The objective of the "canary trap" is to provide unique controlled identifying information, and if and when that information reappears, the source of that information is able to be determined.

24

from Jacob, to which Jacob provided the telephone number 800-550-9191.

## Subsequent Investigation

62.   Immediately subsequent to the May 10, 2022 call, Plaintiff dialed telephone number 800-550-9191, which was answered "Thank you for calling W.W." (W.W. was formerly known as Weight Watchers International.) The person answering for W.W. did not know any "Blane" and knew nothing about any electric bill overcharging.

63.   On May 10, 2022, at 12:53 P.M., 12:54 P.M., and 1:11 P.M., attempts were made to charge $29.99 to Plaintiff's controlled credit card by "EFS OMEGA".

64.   On May 11, 2022, Plaintiff telephoned Omega at the customer service telephone number shown on their web site (877-850-0443) and spoke with an individual identifying by "Amanda."  Plaintiff explained to Amanda that Plaintiff's credit card had been charged 3 times in the amount of $29.99 the day before and was requesting an explanation as to why the charges.  Amanda explained that "EFS" is Omega's "finance arm" and then transferred Plaintiff to "Derrick."  Derrick then explained to Plaintiff that the charges were for extended home warranty, and informed Plaintiff that the newly assigned contract number was "BTB12H80LOC". Derrick then referred Plaintiff to Omega's sales department for further information. Plaintiff then spoke with "Melanie" in the Omega sales department.  Melanie

explained that, because the account was only one day old, the information on the account was not yet in her computer system.  However, Melanie did volunteer that Omega does not directly sell its extended warranties, but instead utilizes third-party agents to do the marketing, and that the "BTB" in the account number identifies Omega's marketing agent that sold the extended warranty.

## COUNT I
## VIOLATION OF THE TCPA - ROBOCALL

65.  Plaintiff incorporates the allegations of paragraphs 1 through 64, *supra.*

66.  Each of the 12 telephone calls listed in paragraph 54, *supra*, were in violation of the TCPA and its implementing regulations, specifically 47 U.S.C. § 227(b)(1)(B) and 47 C.F.R. § 64.1200(a)(3), as Defendant or Defendant's agent initiated a telephone call to Plaintiff's residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express written consent of the called party and there being no emergency.

67.  The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

## COUNT II
## VIOLATION OF THE TCPA - FAILURE TO IDENTIFY

68.  Plaintiff incorporates the allegations of paragraphs 1 through 64, *supra.*

69.  Each of the 12 telephone calls listed in paragraph 54, *supra*, were in

violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(d)(4), as the Defendant or Defendant's agent did not provide Plaintiff with the name of the person or entity on whose behalf the call was being made and a telephone number or address at which the person or entity may be contacted.

70. The aforesaid violations of the TCPA were wilful and/or knowing.

## COUNT III
## VIOLATION OF THE TCPA - NO OPT-OUT MECHANISM

71. Plaintiff incorporates the allegations of paragraphs 1 through 64, *supra.*

72. Each of the 12 telephone calls listed in paragraph 54, *supra*, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(b)(3), as the artificial or pre-recorded message did not provide an automated, interactive voice- and/or key press-activated opt-out mechanism for the called party to make a do-not-call request.

73. The aforesaid violations of the TCPA were wilful and/or knowing.

## COUNT IV
## VIOLATION OF THE TCPA - DO NOT CALL

74. Plaintiff incorporates the allegations of paragraphs 1 through 64, *supra.*

75. Each of the 12 telephone calls listed in paragraph 54, *supra*, were in violation of the TCPA regulations, specifically 47 C.F.R. § 64.1200(c)(2), as Defendant or Defendant's agent initiated telephone solicitations to a residential

telephone subscriber who has registered his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government.

76. The aforesaid violations of the TCPA were wilful and/or knowing.

## COUNT V
## VIOLATION OF THE TCPA - INVALID CALLER ID

77. Plaintiff incorporates the allegations of paragraphs 1 through 64, *supra.*

78. Each of the 12 telephone calls listed in paragraph 54, *supra*, were in violation of the TCPA, specifically 47 C.F.R. § 64.1601(e)(1), as Defendants or Defendants' agent failed to provide caller identification information displaying a telephone number which would permit any individual to make a do-not-call request during regular business hours.

79. The Defendants or Defendants' agent had to take deliberate and overt action to manipulate the telephone network equipment to provide false caller identification information, therefore the aforesaid violation of the TCPA was wilful and/or knowing.

## COUNT VI
## VIOLATION OF THE MTCCCA

80. Plaintiff incorporates the allegations of paragraphs 1 through 64, *supra*.

81. Each of the 12 telephone calls listed in paragraph 54, *supra*, were in

violation of the of the MTCCCA, specifically M.C.L. § 484.125(2)(a), as Defendant or Defendant's agent used a telephone line to contact a subscriber at the subscriber's residence to deliver a recorded message for the purpose of presenting commercial advertising and the subscriber having not requested, consented, permitted, or authorized the contact; or M.C.L. 484.125(2)(b), as Defendant or Defendant's agent delivered or attempted to deliver intrastate commercial advertising having activated a feature to block the display of caller identification information that would otherwise be available to the subscriber.

## COUNT VII
## VIOLATION OF THE MHSSA

82.  Plaintiff incorporates the allegations of paragraphs 1 through 64, *supra.*

83.  Each of the 12 telephone calls listed in paragraph 54, *supra*, were in violation of the MHSSA, specifically M.C.L. § 445.111a(5), as Defendant or Defendant's agent made a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the federal do-not-call list; and/or M.C.L. § 445.111b(1), as Defendant or Defendant's agent did not at the beginning of the telephone solicitation state his or her name and the full name of the organization on whose behalf the call was initiated and provide a telephone number of the organization on request.

## COUNT IX
## VIOLATION OF THE MCPA

84.  Plaintiff incorporates the allegations of paragraphs 1 through 64, *supra.*

85.  Each of the 12 telephone calls listed in paragraph 54, *supra*, were in violation of the MCPA, specifically M.C.L. § 445.903(1), as Defendant or Defendant's agent engaged in unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce that are unlawful by, *inter alia*, falsely representing himself to be an employee of a public utility, making false or misleading statements of fact concerning the reasons, existence of, or amounts of price reductions; and/or representing that a consumer will receive a rebate, discount, or other benefit as an inducement for entering into a transaction when the benefit is contingent on an event to occur subsequent to the consummation of the transaction.

### PRAYER FOR RELIEF

WHEREFORE, the aforesaid premises considered, Plaintiff prays that this Court enter a judgment for Plaintiff and against the Defendant, as follows:

A.    1.  As to Count I: Damages in the amount of $500.00 for each of the 12 TCPA violations alleged, for damages of $6,000.00, which amount shall be trebled because the violations were wilful or knowing; for total damages of $18,000.00.

2.  As to Count II: Damages in the amount of $500.00 for each of the 12 TCPA violations alleged, for damages of $6,000.00, which amount shall be trebled

because the violations were wilful or knowing; for total damages of $18,000.00.

      3.  As to Count III: Damages in the amount of $500.00 for each of the 12 TCPA violations alleged, for damages of $6,000.00, which amount shall be trebled because the violation was wilful or knowing; for total damages of $18,000.00.

      4.  As to Count IV: Damages in the amount of $500.00 for each of the 12 TCPA violations alleged, for damages of $6,000.00, which amount shall be trebled because the violations were wilful or knowing; for total damages of $18,000.00.

      5.  As to Count V: Damages in the amount of $500.00 for each of the 12 TCPA violations alleged, for damages of $6,000.00, which amount shall be trebled because the violations were wilful or knowing; for total damages of $18,000.00.

      6.  As to Count VI: Damages in the amount of $1,000.00 for each of the 12 MTCCCA violations alleged, for total damages of $12,000.00.

      7.  As to Count VII: Damages in the amount of $250.00 for each of the 12 MHSSA violations alleged, for total damages of $3,000.00.

      8.  As to Count VIII: Damages in the amount of $250.00 for each of the 12 MCPA violations alleged, for total damages of $3,000.00.

The cumulative total amount of damages claimed in this action is $108,000.00, and in the event of default judgment is the sum certain damages amount that will be sought.

B.  An award of Plaintiff's taxable costs and disbursements incurred in the filing and prosecution of this action;

C.  An injunction enjoining Defendants from initiating any telephone calls to Plaintiff's telephone lines.

D.  Interest accruing from the date of filing until paid at the statutory rate; and,

E.  Such other and further relief as this Court deems necessary, reasonable, prudent and proper under the circumstances.

Respectfully submitted,

Dated: May 23, 2022

Mark W. Dobronski
Post Office Box 85547
Westland, Michigan 48185-0547
Telephone: (734) 330-9671
Email: markdobronski@yahoo.com
Plaintiff *In Propria Persona*